UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-8463-WM

United States of America
v.
Alfredo Elias-Aguilera
a/k/a
Alfredo Aguilera-Gamez
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?   No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?   No

Respectfully submitted,
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY: _____
Brian D. Ralston
Assistant United States Attorney
Court ID No.   A5502727
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561) 209-1068
Fax:
Email: brian.ralston@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

FILED BY KJZ D.C.

Nov 30, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Alfredo Elias-Aguilera<br>a/k/a<br>Alfredo Aguilera-Gamez<br><br>*Defendant(s)* | Case No. 21-8463-WM |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 28, 2021__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(i) | Attempt to Bring Aliens to the United States |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

David Malone, HSI Special Agent
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __FACETIME__ __TELEPHONE__

Date: __November 30, 2021__

_____
Judge's signature

City and state: __West Palm Beach, Florida__  Hon. William Matthewman, United States Magistrate Judge
*Printed name and title*

## APPLICATION IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, David R. Malone, first being duly sworn, does hereby depose and state as follows:

1. I am a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI), and have been so employed for over seventeen years. Prior to federal employment, I worked for the Town of Jupiter (Florida) Police Department for a period of eight-and-a-half years, serving in the capacity of a police officer, traffic homicide investigator and police Sergeant. Among my responsibilities as an HSI Special Agent, I am trained and empowered to investigate crimes against the United States Immigration laws, and other federal offenses, arising under Titles 8, 18, 19, 21 and 31 of the United States Code.

2. The facts set forth in this affidavit are based on my personal knowledge; information obtained in this investigation from others, including other law enforcement officers; my review of documents, pictures and computer records related to this investigation; and information gained through training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support a Criminal Complaint, I have not included each and every fact known to me and law enforcement concerning this investigation, but have set forth only those facts necessary to establish probable cause to believe that on or about November 28, 2021, Alfredo Elias-Aguilera (a/k/a Alfredo Aguilera-Gamez), a citizen of Cuba and a Lawful Permanent Resident of the United States, committed the crime of Attempting to Illegally Bring Aliens into the United States, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i).

## PROBABLE CAUSE

3. On November 28, 2021, at approximately 3:30 PM, federal law enforcement officers assigned to the U.S. Customs and Border Protection (CBP), Air and Marine Operations (AMO), conducted a vessel stop approximately 7 nautical miles (nm) east of the Lake Worth, Florida Inlet, well within the territorial sea of the United States. A total of twenty persons were discovered onboard.

4. The vessel, later determined to be a 2002 28' Bayliner pleasure craft, bearing Florida registration "FL9218SR," was observed on the PBSO Maritime Radar System approximately 15 nm traveling west towards the United States from the open ocean.

5. Upon observing the vessel cross west of the 12 nm line into the territorial sea of the United States, the CBP AMO marine asset set a course for an investigatory stop.

6. As the CBP AMO asset approached the vessel from the rear, law enforcement had a clear and unobstructed view of the operator, along with approximately 7 persons on the back deck. Law enforcement activated their blue emergency lights to signal to the operator to come to a stop, which he complied. Law enforcement immediately made contact with the operator and asked the operator from where he was coming, which he replied, "West Palm Beach." Law enforcement again asked the operator from where he was coming, which he replied, "Here." Law enforcement asked the operator for identification. The operator produced a Texas Driver's License which showed the name Alfredo Elias-Aguilera ("AGUILERA"). Law enforcement then asked the 7 persons on the back deck for identification, which none were able to produce. At this time, law enforcement physically boarded the vessel.

7. Law enforcement asked AGUILERA if there were any additional persons in the forward cabin as the cabin door was closed. AGUILERA advised there were no persons in the

forward cabin. Law enforcement opened the cabin door and discovered numerous persons in the cabin.

8. During the boarding, law enforcement observed a satellite phone and cellular telephone near the helm of the vessel, which AGUILERA claimed were his property. Law Enforcement observed the cellular phone was unlocked with a map application visible on the screen. The map application showed a marked location near West End, Bahamas, and a marked location near Lake Worth Inlet, Florida.

9. Upon the arrival of the U.S. Coast Guard Cutter (USCGC), a total of 20 persons were transferred for biometric processing and analysis. The Bayliner vessel was seized by AMO and secured at the U.S. Coast Guard Station, Lake Worth Inlet.

10. On November 29, 2021, at the completion of biometric processing and analysis, AGUILERA was determined to be a citizen of Cuba and a Lawful Permanent Resident of the United States. A passenger, R.Q., was also identified as a citizen of Cuba and at one time a Lawful Permanent Resident of the United States.

11. At approximately 5:00 PM, a Regional Concurrence Team (RCT) call was convened between DHS partners, and it was determined that AGUILERA and R.Q. would be brought ashore for further investigation by HSI. The two persons were relinquished to the custody of the U.S. Border Patrol, Riviera Beach, Florida, for administrative processing.

12. The 18 individuals that remained on the USCGC, all of whom were determined to be foreign nationals with no permission to enter the United States were repatriated. The individuals were identified as follows:

    a. Y.G-O., an adult male citizen of Cuba

    b. Y.P-M., an adult male citizen of Cuba

      c.      H.G-P., an adult male citizen of Cuba

      d.      L.R-C., an adult male citizen of Cuba

      e.      P.L-H., an adult male citizen of Cuba

      f.      L.V-G., a juvenile male citizen of Cuba

      g.      L.L-V., an adult male citizen of Cuba

      h.      J.L.A-M., an adult male citizen of Cuba

      i.      Y.M-I., an adult male citizen of Cuba

      j.      R.C-V., an adult male citizen of Cuba

      k.      C.M.G-O., an adult female citizen of Cuba

      l.      D.C-M., an adult female citizen of Cuba

      m.      A.Y.J-G., an adult female citizen of Cuba

      n.      A.G., a juvenile female citizen of Cuba

      o.      M.D-G., an adult female citizen of Cuba

      p.      Y.V-M., an adult female citizen of Cuba

      q.      A.G-V., an adult female citizen of Cuba

      r.      Y.G-P., an adult female citizen of Cuba

13. At approximately 7:19 PM, HSI Special Agents interviewed R.Q. at the U.S. Border Patrol Station. During the interview, R.Q. stated that she was on vacation in The Bahamas from Cuba and was walking when she noticed a group of Cuban people running towards a boat. The Cuban individuals said that they were headed for Miami, and she decided to join them. R.Q. further explained she had previously been a Lawful Permanent Resident in the U.S., however, on a previous trip to Cuba, she was detained by the Cuban government and placed on house-arrest for

three years. When asked if she observed the operator of the vessel, she replied, "Yes, it's the man who is here with me."

14. At approximately 7:50 PM, HSI Special Agents interviewed AGUILERA at the U.S. Border Patrol Station. With the assistance of a native Spanish speaking law enforcement officer, AGUILERA was read his Miranda warnings via a pre-printed form. AGUILERA understood his rights; waived his rights; and elected to speak with the interviewing agents. AGUILERA stated the following:

    a. On Saturday, November 27, 2021, he was contacted via telephone by a Cuban individual looking for a boat captain to go to The Bahamas to pick up family members.

    b. AGUILERA agreed to captain the boat and departed the U.S. early Sunday morning, November 28, 2021, destined for Freeport, Bahamas.

    c. Upon arrival in Freeport, AGUILERA picked up the group of people and departed westbound towards the United States.

    d. AGUILERA expected to be paid for the trip upon returning to the U.S., but does not know the specific amount he was to be paid.

15. WHEREFORE, on the basis of the foregoing, your affiant respectfully submits that probable cause exists to charge Alfredo Elias-Aguilera with Attempting to Illegally Bring Aliens into the United States, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
DAVID MALONE
SPECIAL AGENT, HOMELAND SECURITY
INVESTIGATIONS

Sworn and Attested to me by Applicant by Telephone (Facetime)
per the requirements of Fed. R. Crim. P. 4(d) and 4.1
on the 30th day of November 2021.

_____
HONORABLE WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE

6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 21-8463-WM

### BOND RECOMMENDATION

DEFENDANT: Alfredo Elias-Aguilera a/k/a Alfredo Aguilera-Gamez

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Brian D. Ralston

Last Known Address: _____

What Facility:   Palm Beach County Detention Center

West Palm Beach, Florida

Agent(s):   David Malone, HSI SA
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Alfredo Elias-Aguilera a/k/a Alfredo Aguilera-Gamez

Case No: 21-8463-WM

Count #: 1

Attempt to Bring Aliens into the United States

8 U.S.C. §§ 1324(a)(1)(A)(i)

\* **Max. Penalty:** 10 years' imprisonment; $250,000 fine; 3 years' supervised release; and a $100.00 special assessment

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.